# WILSON *et al.* v. NELSON *et al.*

No. 5471.   Opinion Filed November 30, 1915.

Rehearing Denied January 11, 1916.

(153 Pac. 1179.)

1.  **MUNICIPAL CORPORATIONS—Contract for Public Work—Construction—Independent Contractor.** Where a contract for public work provides that N. shall furnish all materials and labor necessary to complete the work, and that the engineer of the municipality shall inspect the work as it progresses, and require N. to correct or replace any defective work or material, and upon his failure so to do within the time limited in the contract shall cause such defective work or materials to be corrected or replaced at the expense of N., and that, upon delay by N. in the performance of the public work beyond the time limited in the contract or abandonment of the work by N., the municipality may complete the work at the expense of N., **held,** that N. was an independent contractor.

2.  **SAME—Debts Incurred in Performing Contract—Liability of Municipality.** No liability attaches to municipalities for debts of an independent contractor incurred in performing a contract for a municipal work.

3.  **SAME—Contractor's Bond—Construction.** Bond and contract construed, and **held,** that the bond is not the statutory bond for the protection of materialmen and laborers provided for by section 3881, Revised Laws 1910, but that such bond was executed for the protection of the municipality under the provisions of section 468, Revised Laws 1910.

4.  **SAME.** A bond conditioned for the faithful performance of a contract for public work gives rise to no cause of action in favor of materialmen and laborers for materials and labor furnished in the construction of such work, where the contract does not provide for the payment of claims for such material and labor.

5.  **SAME—Action on Contractor's Bond—Petition.** A petition declaring upon a bond executed to the city of Muskogee conditioned upon the faithful performance of a contract between the said city and Nelson Bros., such contract containing no stipulation requiring Nelson Bros. to pay claims for materials and labor used in the performance of such contract, does not state a cause of action in favor of third persons furnishing such materials and labor,

since the contract and bond are not made expressly for their benefit.

(Syllabus by Rummons, C.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by George S. Wilson and another, trustees, against August Nelson and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

The plaintiffs in error, hereinafter designated as plaintiffs, commenced this action in the superior court of Muskogee county against August Nelson and Fred Nelson, partners, trading as Nelson Bros., and the city of Muskogee, and the United States Fidelity & Guaranty Company, the defendants in error, hereinafter styled the defendants, to recover upon certain claims for material and labor aggregating the sum of $3,782.29, furnished by plaintiffs' assignors to Nelson Bros. in and about the construction of a sewer in the city of Muskogee. Nelson Bros. were not served with process. The trial court sustained separate demurrers of the defendants the city of Muskogee and the United States Fidelity & Guaranty Company to the amended petition of plaintiffs, and dismissed the amended petition of plaintiffs as to the defendants named. To reverse this judgment of the trial court the plaintiffs prosecute this appeal. The amended petition of plaintiffs alleges that on May 29, 1911. the defendant the city of Muskogee entered into a contract with Nelson Bros. by the terms of which Nelson Bros. undertook to construct a sewer known as the "Coody Creek sanitary outfall sewer" for the city of Muskogee, and that contemporaneous with the execution of such contract Nelson Bros. executed a bond to the city of Muskogee with

the defendant the United States Fidelity & Guaranty Company as surety, and alleged in separate counts that divers assignors of the plaintiffs furnished material and labor for the construction of said sewer to Nelson Bros. at the instance and request of Nelson Bros., and that assignment had been made to plaintiffs of the claims of the parties furnishing such material and labor, and that such claims were due and unpaid, and further alleged that on or about April 9, 1912, the city of Muskogee stopped Nelson Bros. from any further work on said sewer, and took over complete charge, control, and management of the work and completed it, and that by reason of the supervision and control retained by the city of Muskogee, and by reason of the assumption and completion of said work by said city, by reason of the fact that the defendant city of Muskogee held itself out as having supervision and control of said work, the said defendant the city of Muskogee became liable to plaintiffs' assignors for the materials and labor furnished by them to Nelson Bros. in and about the construction of said sewer. Plaintiffs further allege that by reason of the terms and conditions of the contract and the bond above referred to the United States Fidelity & Guaranty Company became and was liable to plaintiffs' assignors for the material and work furnished by them to Nelson Bros. in and about the construction of said sewer. The provisions of the contract and the bond material to the consideration of this case will be stated in the opinion.

*Mosier, Greenslade & Reynolds,* for plaintiffs in error.

*S. V. O'Hare,* for defendant in error City of Muskogee.

*J. B. Furry,* for defendant in error United States Fidelity & Guaranty Co.

Opinion by RUMMONS, C. (after stating the facts as above). Plaintiffs in their brief present two assignments of error, the first being the sustaining by the court of the general demurrer of the defendant the United States Fidelity & Guaranty Company, and the second being the sustaining by the court of the general demurrer of the city of Muskogee. It seems to us that a conclusion can best be reached in this case by first considering the second assignment of error, the sustaining of the demurrer of the city of Muskogee. Does the amended petition of plaintiffs state a cause of action against the city of Muskogee? The plaintiffs in their brief set out a copy of the material provisions of the contract between the city of Muskogee and Nelson Bros. The clauses of the contract material to a determination of the liability of the city are contained in the second, sixteenth, twenty-second, and thirty-second paragraphs of such contract, which are as follows:

"(2) To perform the work called for in the specifications complete in every detail under the supervision and to the entire satisfaction of the engineer in charge of the work."

"(16) When the contractor at any time has been notified in writing by the engineer of any requirement, or of any precautions neglected or omitted, or of any work improperly constructed, or of any delays in prosecuting the work or stoppage thereof, except for inclement weather, he shall at once remedy same. If, after twenty-four hours' notice in writing, he fails to do so, the engineer may thereupon perform the work, furnish such material, and supply such laborers at the contractor's expense, giving orders for the payment of such labor and materials upon the city, who shall honor all such orders and deduct the cost thereof from the amount due or to become due to the contractor."

"(22) In the case of any unnecessary or inexcusable delay in the general conduct of the work under this contract, or in the event of an actual or practical abandonment of the work, the engineer will notify the contractor and his bondsmen in writing to that effect. If the contractor or his bondsmen (who, if they shall proceed with the work, shall assume all the obligations and subject to all the restrictions herein imposed upon the contractor) shall not within six consecutive days thereafter take such measure as will, in the judgment of the engineer, insure the satisfactory completion of the work in the time specified, or in a reasonable time thereafter, if he has been permitted to continue beyond the time specified, as provided for elsewhere in the contract, engineer may then, by and with the consent of city council, notify the aforesaid contractor and his bondsmen to discontinue all work under the contract, and it is hereby agreed that the contractor and his bondsmen shall immediately respect said notice to stop work, and cease to have any right to possession of the ground. The engineer shall thereupon have the power, under the direction of the city council, to place such and so many persons as he may deem advisable by contract or otherwise to complete the work herein described, and to use such materials as he may find upon the line of said work, and to procure other materials for the completion of the same. All expense of such completion of the work, including the additional amount to be paid the persons completing the same, the claim of the engineer for services for overtime, and the compensation of the inspectors, the $20 per day to be paid to the city, and any other claim arising under the contract shall be deducted and paid by the parties of the first part out of any such moneys as may then be due the said contractor, or which may thereafter become due under and by virtue of this agreement or any part thereof, and in case such expense is less than the sum which would have been payable for such work under this contract if the same had been completed by the party of the second part, the contractor shall be entitled to receive the difference; if the expense is greater,

then the bondsmen will be called upon to make good the difference."

"(32) And it is further agreed that the said plans herein referred to and the specifications hereto annexed are to form a part of the contract, and that each of the parties is to be bound by all the stipulations, agreements, and covenants therein by them to be performed as fully as if the same were herein contained and repeated.".

From these provisions of the contract it will be apparent that the conclusions set out in plaintiffs' amended petition that the city had and retained complete supervision of and general control of the progress and construction of said work are not well founded. Under the terms of the contract set out in plaintiffs' amended petition, and which must control any general allegations contained in such petition as to the provisions thereof, Nelson Bros. were independent contractors, and not the agents of the city of Muskogee in the construction of such work, and the city would not be liable for any debts contracted by such independent contractor in and about the progress of such work. The case at bar is to be distinguished from *Derr Construction Co. v. Gelruth,* 29 Okla. 538, 120 Pac. 253, and *Muskogee Electric Traction Co. v. Hairel,* 46 Okla. 409, 148 Pac. 1005. In those cases this court held that, where the work provided for by contract was under the complete control of the engineer of the employer, who might order the work to be commenced or discontinued as he deemed it advisable, and who might at any time change the plans and specifications under which the work was being done, providing for an increase or decrease pro rata in the compensation as such changes ordered by the engineer might affect the work, and providing that the engineer might at any time require the contractor to discharge any employee who appeared to the

engineer or the inspector to be negligent or disobedient, and not to re-employ any party so discharged, such contractor was not an independent contractor, but only an agent of the employer. In the case at bar the only authority retained by the city was the right of inspection by its engineer to see that the work was being conducted by the contractor in accordance with the plans and specifications, and to require that any work improperly constructed should at once be remedied by the contractors, and upon their failure so to do the engineer might perform such work and furnish such materials as might be necessary at the expense of the contractors, and the right to cancel and annul the contract in the event of inexcusable or unnecessary delay or of an actual or practical abandonment of the work by the contractors, and the right, in the event of such cancellation of the contract, to complete the work at the expense of the contractors. The contractors, under the terms and provisions of this contract, were left in absolute control and management of the work, with the right to employ such labor and purchase such materials as they might see fit within the specifications of the contract, without any interference or control by the city or its officers, so long as they performed the work according to the terms of their contract in accordance with the specifications referred to therein, and without inexcuasble or unnecessary delay. Nelson Bros. were independent contractors, and therefore no liability can attach to the city for any contracts made by them in prosecuting such work.

Plaintiffs allege that the city had at all times funds sufficient to pay Nelson Bros. for the construction of such sewer, and that from time to time the city made settlements with and payments to Nelson Bros. upon the estimates of the city engineer. It is apparent that the city

must necessarily have had the funds either in the treasury or by a valid levy to pay the contract price for the work provided for in this contract, otherwise the city would have been without authority to enter into the contract, and we can conceive of no reason by which the facts alleged would create a liability to plaintiff's assignors on the part of the city; nor does the amended petition allege that at the time of the commencement of the action or at the times the materials and labor were furnished to Nelson Bros. by plaintiffs' assignors the city of Muskogee had in its hands any funds belonging to Nelson Bros.

The only authority cited in the brief of counsel for plaintiffs on the question of the liability of the city is the case of *American Mill Co. v. City of Montesano,* 63 Wash. 683, 116 Pac. 257. We have examined this case, and find that it turns principally upon the failure of the city to take a bond from the contractor for the payment of claims for material and labor furnished and done in and about the work contracted for, and by reason of such failure the Supreme Court held that the city was liable to a materialman for materials furnished the contractor in and about the work. This case is in line with other cases in the State of Washington, and, while no Washington statute is quoted, it must rest upon a statutory liability; for the State of Washington seems to stand alone in fixing a liability upon a municipality for a failure to take the statutory bond for the protection of those furnishing materials and labor to contractors for public works. The case cited by plaintiffs, however, does not seem to us to be in point in the case at bar, for the reason that the amended petition of plaintiffs does not allege that the city of Muskogee failed to take a bond from the contract-

ors for the protection of materialmen and laborers as re-
quired by law. No liability of the city is predicated upon
the failure or neglect of the city to take the bond for the
protection of materialmen and laborers as required by
law, but, on the contrary, it is strongly insisted by plain-
tiffs that the bond taken by the city of Muskogee from
the contractors was and is sufficient to protect material-
men and laborers. We therefore conclude that the amend-
ed petition of plaintiffs states no cause of action against
the city of Muskogee, and that the ruling of the trial
court in sustaining the demurrer of the city was right.

We come now to a consideration of the first assign-
ment of error of plaintiffs, the ruling upon the demurrer
of the defendant United States Fidelity & Guaranty Com-
pany. Both counsel for plaintiffs and the defendant com-
pany have aided the court by exhaustive briefs upon the
question involved as to the liability of defendant company.
The parts of the contract material to a consideration of
the question as to whether or not the defendant United
States Fidelity & Guaranty Company is liable are con-
tained in the first, twenty-third, and thirty-first sections
of the contract, which are as follows:

"(1) To furnish all necessary tools, labor, and ma-
terial required to perform in a perfect and thoroughly
workmanlike manner the construction of the Cooley Creek
sanitary outfall sewer contract as covered by the agree-
ment and set forth in detail in the plans and specifications
of this work, which are hereby declared to be a part of
this contract, and equally binding with the provisions of
same."

"(23) It is expressly understood and agreed that
the party of the second part shall indemnify and save
harmless the city from all claims for labor performed
and material furnished, and shall furnish the city with

satisfactory evidence when called for that all persons who have done work or furnished materials for which the said city may be liable have been fully paid and satisfied; otherwise the said city shall have the right to pay all such claims out of any moneys that may be due or become due the said contractor. In the event of the abandonment of the work the money due the contractor for work up to the date of the abandonment may, at the option of said city, be applied in the payment of labor. This does not include the retained percentage. The contractor hereby agrees to keep sufficient guards by day and guards and lights by night to prevent accidents by travel and to indemnify and save harmless the said party of the first part from all suits or actions of any kind or description for or on account of any injuries or damages received or sustained by any person or persons or properties by or from said party of the second part, his servants, agents, employees, or workmen during the prosecution of the work, or by or in consequence of any improper materials in its construction, or by or on account of any act of negligence or omission whatsoever of said party of the second part, or any of his servants, employees, workmen, or agents; and, in case of suit or suits, claim, or claims therefor being made, so much of the money due or to become due the said party of the second part under and by virtue of the agreement as shall be considered necessary by said city may be retained by said city and withheld from said party of the second part until such suits or claims have been settled and evidence of such settlement furnished the city to their satisfaction, and the said party of the first part shall not in any way be liable therefor."

"(31) Before this contract shall become operative, the contractor shall procure the execution and delivery of a proper bond with sureties to be approved by the city in the sum approximately the full amount of the contract price, conditioned for the faithful performance of all the conditions and provisions of the contract on the

part of the party of the second part to be performed, and for the indemnification of the party of the first part from and against all loss by reason of the nonfulfillment by the party of the second part of the covenants contained in the contract to be performed by him, and also against any loss by reason of any and all claims, defects, objections, liens, incumbrances, damages, negligence, cost, or suits arising from the nonfulfillment or negligent performance by the party of the second part of any of the provisions of the contract."

The bond executed by Nelson Bros. and the United States Fidelity & Guaranty Company ran to the city of Muskogee, and was conditioned as follows:

"Now, therefore, the conditions of this obligation is such that, if the contractor shall well and truly keep and perform all the terms and conditions of the said contract on his part to be kept and performed, both concerning the work immediately contemplated and of any extension and alterations thereof (of which extensions and alterations the said surety hereby waives notice and agrees that all of the provisions of this obligation shall apply to said contract, as it may from time to time be extended and altered, either by the engineer under the provisions therein contained, or by the parties thereto, in the same manner as if such extension and alteration were actually inserted therein) that may be ordered by the said city, and shall indemnify and save harmless the said city from all suits or actions of any name or description brought against the said contractor or the said city for or on account of any injuries or damages received or sustained by any person or persons by or from the said contractor, his servants or agents, in the construction of said work, or in consequence of any negligence in guarding the same, or any improper materials used in its construction, or by or on account of any act or omission of the said contractor, his servants or agents, in or about the premises, then this obligation shall be void; otherwise to remain in full force and effect."

The question presented is one of some difficulty; for the reason that the old rule of law that the surety was a favorite of the law, and that his obligations were *strictissimi juris,* as to surety and guaranty companies executing bonds for hire, has been greatly modified, so that it now seems to be that in construing bonds of that character the interpretation most favorable to the obligee is given them. *Columbia Bank & Trust Co. v. United States Fidelity & Guaranty Co.,* 33 Okla. 535, 126 Pac. 556; *Maryland Casualty Co. v. Wellston,* 47 Okla. 417, 148 Pac. 691; Frost on Guaranty Insurance (2d Ed.) p. 490.

So that, where any ambiguity or uncertainty appears in the language of bonds of that character, the surety company is held to an interpretation most favorable to the obligee, but, while this is true, such companies still have the right to make and enter into such contracts as they may desire, and, where their contract is neither ambiguous nor uncertain, the courts cannot make a new contract for them.

The statutory provisions as to contractors' bonds required to be taken by municipalities are found in the following sections: Comp. Laws 1909, sec. 781; Rev. Laws 1910, sec. 756; Comp. Laws 1909, sec. 989; Rev. Laws 1910, sec. 468; Comp. Laws 1909, sec. 6164; Rev. Laws 1910, sec. 3881.

The first section cited relates to boards of public works in cities of over 25,000, and apparently has no application to the case at bar. The second section, Rev. Laws 1910, sec. 468, applies to the construction of sewers in cities and towns, and, so far as it refers to the taking of a bond by the municipality, is as follows:

"* * * And may require the giving of a good
and sufficient bond for the faithful execution of the work,
and for the protection of the city and all property owners
against any loss or damage by the negligent execution
of such work."

The last section, section 3881, Rev. Laws 1910, is as
follows:

"Whenever any public officer shall, under the laws of
the state, enter into contract in any sum exceeding one
hundred dollars, with any person or persons, for the pur-
pose of making any public improvements, or constructing
any public buildings or making repairs on the same, such
officer shall take from the party contracted with a bond
with good and sufficient sureties to the State of Oklahoma,
in a sum not less than the sum total in the contract, con-
ditioned that such contractor or contractors shall pay all
indebtedness incurred for labor or material furnished in
the construction of said public building or in making said
public improvements."

It is strongly contended by plaintiffs that the bond in
question, when construed together with the contract, as
it must be, sufficiently conforms to the provisions of the
section of the statutes last quoted to give plaintiffs a
cause of action upon the bond against the defendant
United States Fidelity & Guaranty Company. They fur-
ther contend that, even though the bond be held insuffi-
cient as a stautory bond under the section last quoted,
yet cities have an inherent and implied power to take
from contractors bonds for the protection of material-
men and laborers, and that the conditions of this bond,
construed with the contract, are sufficient to give plain-
tiffs a cause of action upon the bond. It seems to us
that these two propositions, which, of course, are strongly
controverted by the defendant, present the questions to

be determined by the court in passing upon the action of the trial court upon the demurrer of defendant the United States Fidelity & Guaranty Company.

We do not think it can be seriously contended that the bond set out in the amended petition of plaintiffs is the statutory bond provided for by section 3881, Rev. Laws 1910. This bond runs to the city of Muskogee, and is conditioned upon the faithful performance by the contractor of the terms and conditions of the contract and that the contractor shall indemnify and save harmless the city from all suits or actions brought against the contractor or the city for injuries or damages received or sustained by any person or persons in consequence of any negligence of the contractor or his servants in the construction of the work; while the bond provided for by the statute should run to the State of Oklahoma, conditioned that the contractor shall pay all indebtedness incurred for labor or material furnished in the construction of such public work. Of course, it is conceded that the mere fact that the bond runs to the city of Muskogee, instead of to the State of Oklahoma, is not material in the determination of the question of whether or not the bond is statutory, but we think there can be no doubt that the conditions of the bond are very material in determining that question. The section of the statute in question was intended solely for the protection of materialmen and laborers dealing with contractors upon public works, and the conditions required to be inserted in the bond are for the benefit of materialmen and laborers alone, and not for the benefit of the municipality making the contract. While, no doubt, the bond provided for in section 468, Rev. Laws 1910, relating to the construction of sewers, could also include in its provisions conditions complying

with section 3881, *supra,* and one bond might be so conditioned as to protect both the municipality and the materialmen and laborers under the two sections of the statutes, yet in the case at bar it is apparent that no attempt was made by the officers of the city of Muskogee in taking the bond sued upon herein to conform to the provisions of section 3881, *supra.* We are clearly of the opinion that the bond was taken by the city under the provisions of section 468, *supra,* and therefore cannot be considered as the statutory bond under the provisions of section 3881, *supra.*

It therefore remains to be seen whether or not the assignors of plaintiffs are protected by the conditions of this bond, construed together with the contract, regardless of the question of the statutory character of the bond. We think the overwhelming weight of authority authorizes the municipality, regardless of statute, in contracting for the construction of public works, to provide for the protection of materialmen and laborers by bond requiring the contractor to pay for the materials and the labor used in the construction of the public work. *Knight & Jillson Co. v. Castle,* 172 Ind. 97, 87 N. E. 976, 27 L. R. A. (N. S.) 573, and note page 581; 2 Dillon, Municipal Corporations (5th Ed.) 1266.

So that, if the bond in question bound the contractor to pay persons furnishing material and labor in the construction of the sewer, such persons would have a right to avail themselves of such bond, and would have a cause of action against the surety thereon. We have carefully examined the authorities cited in the briefs of counsel for plaintiffs, and for the United States Fidelity & Guaranty Company upon this question. In the majority of

cases cited by plaintiffs the bond or the contract which the bond secured provided in express terms that the contractor should pay persons furnishing materials or labor in the construction of such work. We shall examine briefly the cases cited by plaintiffs in which no such provisions occur. The case of *Alpena v. Title Guaranty & Surety Co.*, 158 Mich. 678, 123 N. W. 536, was an action against the officers of the city of Alpena, under a statute of Michigan giving to a materialman or an artisan or laborer a right of action against the officers of a municipality who might fail or neglect to take the statutory bond to protect the claims of persons furnishing material and labor for public works. The contract provided that the contractor should at his own proper cost and charges provide all manner of labor, materials, apparatus, utensils, and cartage of every description needful for the performance of the said several works. A bond was taken conditioned that the contractor should well and truly keep and perform all terms and conditions of said contract, and should indemnify and save harmless the said city of Alpena, the city council, and officers thereof against all claims due from said contractors or from subcontractors under them which might accrue to any person, firm, or corporation on account of any labor performed or materials furnished under and by virtue of the contract. The court, holding that the bond taken was sufficient security for the protection of persons furnishing material and labor, says:

"Now, if we turn to the contract, we discover no stipulation for saving harmless the city council and officers, except the provision that the Murray Company shall at its own proper cost and expense furnish the labor and material. If these two provisions are read together,

therefore, it imports an obligation to save harmless the city council and officers thereof by furnishing at their own proper cost and expense the labor and material required."

It is apparent that the opinion in this case, rested upon the liability imposed by statute upon the officials to protect materialmen and laborers, and that the liability of the surety upon the bond taken was based upon the condition to save harmless the city council and officers thereof.

The case of *Lyman v. City of Lincoln*, 38 Neb. 794, 57 N. W. 531, seems to squarely support the contention of plaintiffs. The court there holds that a bond to faithfully perform all the terms of a contract, which provided, "The contractors shall file with the board of public works receipts of claims from all parties furnishing them with material and labor in the construction of such engine houses," was for the benefit of all persons who furnished labor and material used in said contract, and such persons could sue on the bond. This case has been followed as the rule of law in Nebraska in a number of decisions of the Supreme Court of that state. *Sailing v. Morrell*, 97 Neb. 454, 150 N. W. 195, and cases there cited.

In the case of *Indianapolis v. Scott*, 72 Ind. at page 196, the Supreme Court of Indiana, passing upon a bond conditioned that the contractor should faithfully comply with the conditions of the contract in all respects according to the true intent and meaning thereof, and where it was stipulated in the contract that, "the contractor shall and will furnish such good, proper, and sufficient material of all kinds whatsoever as shall be necessary for the alterations, additions, and repairs of said schoolhouse,

and perform all kinds of labor whatsoever as shall be necessary for the erection and completion of the same in all respects," held that, in an action by the city upon the bond, an allegation of a breach of the bond, in that the contractor had failed to pay for all the material and labor furnished by him under said contract, was good against a demurrer. This case and the Nebraska case are the only cases cited by plaintiffs, and the only cases we have been able to find, after some search, which support the contention of plaintiffs upon a bond and contract like those in the case at bar. In an exhaustive subject note to the case of *Knight & Jillson v. Castle, supra,* the authorities upon the question here involved are elaborately set forth, and it seems from an examination of the authorities there cited that it is essential that the stipulations and conditions in a contractor's bond should be sufficiently precise and definite in terms to lay upon the obligees an obligation to pay or cause to be paid the debts due the beneficiaries in order to afford the latter in any event a cause of action. In order for a third party to recover upon an agreement between others to which he is not privy, the contract must be made expressly for his benefit. It must not only be intended to secure some benefit to him; but there must be a promise legally enforceable. Rev. Laws 1910, sec. 895; *Electric Appliance Co. v. U. S. F. & G. Co.,* 110 Wis. 434, 85 N. W. 648, 53 L. R. A. 609; *Parker v. Jeffery,* 26 Or. 186, 37 Pac. 712; *Kansas City v. O'Connell,* 99 Mo. 357, 12 S. W. 791; *Lancaster v. Frescoln,* 192 Pa. 452, 43 Atl. 961; *Green Bay Lumber Co. v. School District,* 121 Iowa, 663, 97 N. W. 72; *Hunt v. King,* 97 Iowa, 88, 66 N. W. 71; *Searles v. City of Flora,* 225 Ill. 167, 80 N. E. 98; *Cleveland Metal Roofing Co. v. Gaspard,* 89 Ohio St. 185, 106 N. E. 9, L. R. A. 1915A, 768.

The cases last cited are practically in direct conflict with the Nebraska rule, and the Nebraska Supreme Court seems to stand alone in construing a contract and bond such as in the case at bar to create a liability in favor of persons furnishing material and labor under the contract. So far as plaintiffs are concerned, the only condition in the bond which could in any event concern them is the provision that the contractor shall well and truly keep and perform all the terms and conditions of the contract on his part to be kept and performed. The other conditions in the bond are for the benefit of the city and to protect the city against any negligence of the contractor or his servants in or about the work or the materials used therein. Let us see what the provisions of the contract are which could in any way be construed as a promise made for the benefit of plaintiffs' assignors. The first clause requires the contractors to furnish all necessary tools, labor, and material. The fourth clause requires the contractor to guarantee the city against any loss whatever by reason of any obligations the contractor may have incurred. The twenty-third clause provides that the contractors shall indemnify and save harmless the city from all claims for labor performed and materials furnished, and shall furnish the city with satisfactory evidence, when called for, that all persons who have done work or furnished materials for which the said city may be liable have been fully paid and satisfied; otherwise the said city shall have the right to pay all such claims out of any money which may be due or become due the contractors. We have already disposed of the question of the liability of the city for claims for material and labor, so that the twenty-third clause referred to cannot be applicable to the claims of plaintiffs'

assignors, for the reason that the city was never liable therefor, and could in no event, under the contract, become liable therefor, so that the contractors were · not bound to indemnify and save harmless the city from the claims of plaintiffs, nor could the city, under the provisions of the contract, have demanded evidence from the contractors that plaintiffs' claims had been paid, because the city was not liable therefor, nor could the city have paid such claims and deducted them from the amount due the contractors for the same reason. This court, in *Hutchinson v. Krueger*, 34 Okla. 23, 124 Pac. 591, 41 L. R. A. (N. S.) 318, Ann. Cas. 1914C, 98, construing a builder's bond the condition of which was as follows:

"Now, if the said Robert Krueger shall pay all claims for labor and material contracted in the erection of said county jail building to each and all persons entitled thereto, and which claims might be the basis of liens on said lots and building, then this bond to be void; otherwise to remain in full force and effect. *   *   *"

—held that, inasmuch as no mechanic's lien claims would lie against the county jail, the petition stated no cause of action upon the bond. *Smith v. Bowman,* 32 Utah, 33, 88 Pac. 687, 9 L. R. A. (N. S.) 889, and note.

The fourth clause of the contract also would not afford a basis for plaintiffs' cause of action; for it only provides that the contractors shall guarantee the city against any loss whatever by reason of obligations incurred by said contractors. As there was no liability of the city for the obligations of the contractor, the city could in no event incur any loss. Upon the authority of *Hutchinson v. Krueger, supra,* we are constrained to the opinion that no cause of action arose in favor of plain-

tiffs upon the fourth and twenty-third clauses of the contract.

Does the agreement to furnish all necessary tools, labor and material found in the first clause of the contract give a cause of action to plaintiffs? In the case of *Puget Sound Brick Co. v. School District,* 12 Wash. 118, 40 Pac. 608, the contract provided that the contractor should furnish the materials. The bond given to secure the performance of the contract was conditioned that the contractor should faithfully, timely, and truly do and perform the said work, and comply with said contract, plans, and specifications. The court, construing the contract and bond, say:

"It is true that it is therein provided that he shall furnish the materials, and it would be fair to presume that that meant that he should furnish them at his own expense, but it could not be inferred from the fact that he was required to do this that he thereby bound himself to pay the persons from whom the materials should be obtained." *Green Bay Lumber Co. v. School District, supra; Searles v. City of Flora, supra; Hunt v. King, supra.*

It seems from a reading of the foregoing authorities, and indeed from a consideration of the terms and conditions of the contract and the bond in question in the case at bar, that the contractors by the provisions under discussion bound themselves to do the work and to furnish all necessary material to complete their contract, and that they nowhere agreed or undertook to pay claims for material or labor, except such as might give rise to a liability against the city, and, having concluded that the city is not liable, we cannot avoid the conclusion that the

surety upon the bond in question did not obligate itself to pay the claims of the assignors of plaintiffs.

We are very clearly of the opinion that the bond in question was taken by the city of Muskogee under the provisions of section 468, Rev. Laws 1910, relating to the construction of sewers; and from a reading of the contract and the bond it seems clear that the bond was executed for the purpose of protecting the city against any negligence of the contractors or defective workmanship or material in the construction of the work, and for the benefit of the city in guaranteeing the performance of the contract by the contractors in accordance with its terms, and that it was not the intent of the parties entering into the contract and bond to protect those furnishing material and labor by the terms of the bond and contract entered into, for such bond and contract certainly do not expressly guarantee payments to materialmen and laborers. As we have said before, bonds executed by surety companies for hire are liberally construed; yet we are not at liberty to set aside the contract entered into by them when they executed this bond, and substitute one which the officers of the city should have required to be made. The surety company might have declined to guarantee the payment by the contractors of all claims for material and labor as required in the bond provided for by the statute intended for their protection, and, while it is clear that the officers of the city failed and neglected to perform the duty imposed upon them by law, yet we cannot for that reason cast the burden of their negligence upon the defendant, who never assumed it.

We are of the opinion that the ruling of the trial court sustaining the demurrer of the United States Fidelity & Guaranty Company was correct, and that the judgment should be affirmed.

By the Court: It is so ordered.