G. A. MOSITES COMPANY OF FORT WORTH, INC., Appellant,

v.

The AETNA CASUALTY AND SURETY COMPANY, an Insurance Corporation, et al., Appellees.

No. 47996.

Supreme Court of Oklahoma.

Jan. 20, 1976.

Harry L. Seay III, Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Inc., Tulsa, for appellant.

Remington Rogers, Tulsa, for appellees.

DAVISON, Justice.

This is an appeal from an order of the District Court of Tulsa County sustaining motions of the appellees, (defendants), for summary judgment. The appellant, (plaintiff), as a supplier under a subcontractor, sued the defendants, W. R. G. Construction Company, prime contractor; Aetna Casualty and Surety Company; and the City of Tulsa; along with defendant, Offutt Construction Company, the subcontractor.

The appellee, W.R.G., made a certain contract with the City of Tulsa covering a public water works improvement for a contract price in excess of $1,000,000.00 The contract included within its terms a performance bond which guaranteed the performance of the work and a separate statutory payment bond which guaranteed payment of laborers and materialmen. The appellee, Aetna, executed both the contract and the statutory payment bond as surety.

Thereafter, the prime contractor, W.R.G., made a subcontract with the defendant, Offutt Construction Company, for a contract price in excess of $400,000.00, which covered a part of the work on the prime contract. The appellant, under a contract with the subcontractor, Offutt, supplied to the project certain material and labor on which the contract consideration was $11,417.00.

All work on the above contracts was completed. The City of Tulsa has paid the prime contractor; the prime contractor has paid the subcontractor; but the subcontractor, Offutt, did not pay Mosites, the appellant. The last material and work supplied by the appellant on this project was in September, 1972. This action was filed in August, 1973.

The trial court sustained the motions of appellees for summary judgment for the reason that the ninety days notice, required in 61 O.S. § 2 by materialmen and laborers not in direct contractual relation with prime contractor, was not given by appellant.

This appeal is from that judgment. The trial court gave summary judgment for appellant against the subcontractor, Offutt, apparently without resistance and that judgment is not involved in this appeal.

On the record before us, we are sure that if the appellant had given the notice required by 61 O.S. § 2, the appellant would simply have relied on the statutory bond given under 61 O.S. § 1 and would have received full recovery thereunder. Failing to give notice, he now urges his right to recover, without said notice, upon two separate and alternative theories. While appellant's argument takes several approaches, we would somewhat simplify them into two alternative propositions.

First, the appellant contends that this action may be maintained as a third party beneficiary under the prime contract and its included performance bond, without reference to the statutory payment bond and 61 O.S. §§ 1 and 2. Second, this action may be maintained on the statutory payment bond, as a third party beneficiary contract given under the terms of ordinances of the City of Tulsa and this without regard to the notice provision of 61 O.S. § 2.

The trial court held that the appellant's only action was on the payment bond given under 61 O.S. § 1, being the "statutory bond" called for in the contract. The pertinent provisions of the statutes thereon are as follows:

61 O.S. § 1—

"Before any contract, exceeding One Thousand Dollars ($1,000.00) in amount, for the purpose of making any public improvements or constructing any public building or making repairs to the same is awarded, the person or persons to whom such contract is awarded shall furnish to the State of Oklahoma a bond with good and sufficient sureties to the State of Oklahoma, in a sum not less than the sum total of the contract, conditioned that such contractor or contractors shall pay all indebtedness incurred by such contractors or their subcontractors who perform work in the performance of such contract, for labor and materials and repairs to and parts for equipment used and consumed in the performance of said contract."

61 O.S. § 2—

"Such bond shall be filed in the office of the agency, institution, department, commission, municipality or government instrumentality that is authorized by law and does enter into contracts for the construction of public improvements or buildings, or repairs to the same; and the officer with whom the bond is filed shall furnish a copy thereof to any person claiming any rights thereunder. Any person to whom there is due any sum for labor, material or repair to machinery or equipment, furnished as stated in the preceding section, his heirs or assigns, may bring an action on said bond for the recovery of said indebtedness, provided that no action shall be brought on said bond after one (1) year from the day on which the last of the labor was performed or material or parts furnished for which such claim is made.

Provided, however, that any person having direct contractual relationship with a subcontractor performing work on said contract, but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond only upon giving written notice to said contractor and surety on said payment bond within ninety (90) days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material or parts for which such claim is made stating with substantial accuracy the amount claimed and the name of the party to whom the material or parts were furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any

place he maintains an office or conducts his business, together with a copy thereof to the surety or sureties on said payment bond."

With respect to appellant's first proposition, we note that Oklahoma recognizes third party beneficiary contracts and has fixed by statute the right of the beneficiary to enforce such contracts. 15 O.S. § 29 provides as follows:

"A contract, made expressly for the benefit of a third person, may be enforced by him at anytime before the parties thereto rescind it."

This Court in a number of cases has recognized such contracts and has enforced rights thereunder of laborers and materialmen in construction contracts. *Gibbs v. Trinity Universal Insurance Company,* Okl., 330 P.2d 1035 (1958).

■ The question presented by the appellant's first proposition is whether or not the contract in this case with its included performance bond constituted a third party beneficiary contract in favor of the appellant. The intention of the parties to the contract as they are reflected in the contract must provide the answer to this question. In this connection, we note a general rule set out in 17 Am.Jur.2d, Contracts § 304, pp. 727–728 as follows:

"As a general proposition, the determining factor as to the right of a third party beneficiary is the intention of the parties who actually made the contract. The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts. Thus, it is often stated that the contract must have been intended for the benefit of the third person in order to entitle him to enforce it."

This section then makes the further statement that:

"The question whether a contract was intended for the benefit of a third person is generally regarded as one of construction of the contract. The intention of the parties in this respect is determined by the terms of the contract as a whole, construed in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish."

The necessity of finding the intent of the parties to the contract in determining whether a third party beneficiary contract was created is pointed out in the *Gibbs* case, supra, and in *Byler v. Great American Insurance Co.,* 395 F.2d 273 (10th Cir., 1968).

■ In determining whether a third party beneficiary contract was intended, we look only to the contract and its included performance bond and not to the statutory payment bond, which admittedly covers the appellant, but on which an action is barred by appellant's failure to give the required ninety days notice.

Two facts in this case lie back of a consideration of the intent of the parties to the contract. First, the prime contract called for a "statutory" bond which would fully protect the appellant, except for the failure to give the required notice, and that the state law (61 O.S. § 1) required that such a bond be given to protect all laborers and materialmen on this public contract. Second, a third party beneficiary contract is urged here to protect one not contractually connected with the prime contractor. In other words, the third party beneficiary contract sought to be established here must not create just an enforceable obligation on the prime contractor to pay his own debts, but it must create an enforceable obligation on the prime contractor to pay the debts of others, namely his subcontractor's debts. This is a significant distinction and it is noted that this distinction seems to be one of the reasons for the requirement in 61 O.S. § 2 for the ninety days notice by those not in direct contractual relationship with the prime contractor. Obviously, a prime contractor would be more likely to agree to pay his own debts than he would the debts of others, the existence of which he might not know of in the absence of notice.

Privity of contract is not an issue itself, but it is relevant to the question of intent.

We see nothing in the prime contract that expresses an intent that he pay the debts of others. If such were intended, the contract could easily have stated that the prime contractor is liable for the claims of all laborers and materialmen, regardless of the tier in the subcontract structure where they might be. A clear intention to protect all laborers and materialmen on this public project and give them legally enforceable rights is shown in the contract only by a requirement that the contractor secure "the statutory bond", which he did and which is a requirement of state law.

The prime contract does not expressly provide for the payment of claims such as this by the contractor. The appellant concedes there is no "express" contract with the prime contract, but that there is an "implied" contract, citing a number of provisions in the contract as follows: The prime contractor agrees to "perform all work and furnish all supplies and materials", all "risks" and "responsibility" are on the contractor. The contractor is made "as fully responsible" for "acts and omissions" of his subcontractors "and of persons either directly or indirectly employed by them" as for his own employees. Appellant then states that the contract makes the contractor responsible for payment of laborers, materialmen and subcontractors, but the contract does not so provide. To support that statement, he cites the provision of the contract which provides that the contractor shall furnish the city satisfactory evidence on demand that all persons who have done work or furnished materials have been paid and in the absence thereof the city may retain funds. This provision would relate equally to an express obligation of the contractor under the payment or statutory bond provisions. This latter provision is not coupled with a provision to pay as it was in *Algonite Stone Mfg. Co. v. Fidelity & Deposit Co.,* 100 Kan. 28, 163 P. 1076 (1917), cited both in appellant's brief and in the *Gibbs* case,

supra. We do not think any of these provisions in the contract create by implication an enforceable third party beneficiary contract.

■ A great number of cases, both by this Court and from other jurisdictions, indicates that considerable liberality is shown in protecting laborers and materialmen where no separate payment bond has been secured, or where an action on the payment bond fails as in the present case. Generally, third party beneficiary rights are not created unless the contract shows some provision regarding payment. No such provision is contained in the contract in the instant case. To make the contract in the case a third party beneficiary contract would be tantamount, for all practical purposes, to making all public construction contracts third party beneficiary contracts —in which case the reason for requiring payment bond by statute would no longer exist. The cases do not go that far. We have carefully reviewed the many cases cited by the appellant and each is distinguishable. None cited have gone as far as we are asked to go here.

Both parties discuss our opinion in *Wilson v. Nelson,* 54 Okl. 457, 153 P. 1179 (1915), which case lends support to our conclusion on the appellant's first proposition. There, in a public contract, officials of the City of Muskogee negligently failed to secure a statutory bond to protect laborers and materialmen as required by statute and a subcontractor attempted to collect, as the appellant does here, on the contract and a performance bond. The language is somewhat similar to that in the instant case. That opinion denied recovery. The parties note in that case language which required the contractor to furnish labor and material and the court indicates the contractor is to furnish same at his own expense not as expense of city, but this does not infer an obligation to the third party supplier. The appellant asks us to overrule that opinion to the extent of its language to that effect. This we decline to do. In the context in which the lan-

guage is used in that case and would be used in the instant case, we believe the opinion is supported by the great weight of authorities from other jurisdictions. See a statement thereon and cases cited in 77 A.L.R., p. 101 and 118 A.L.R., p. 75.

Appellant cites many cases from other jurisdictions which in one way or another are distinguishable from our fact situation. In support of this proposition, appellant cites two cases involving Oklahoma, the *Gibbs* case, supra, and *Byler* case, supra. Both are distinguishable. Both involved private contracts on which state law does not require a statutory payment bond. Both involved claims by subcontractor having a contractual relationship with the contractor. Furthermore, in *Gibbs*, supra, the contract specifically required the contractor to pay the subcontractor. In *Byler,* supra, the contract provided that failure to make prompt payment to subcontractors or for labor and material was sufficient grounds to cancel the contractor's employment. The contract provided the contractor would be reimbursed monthly for all amounts paid on account of labor and material including subcontracts. Here, the court said clearly all payments were to be made by the contractor. In the instant case, the obligation to pay the appellant rested with the subcontractor with whom he dealt.

We hold as did the trial court that the contract and included performance bond did not create an enforceable third party beneficiary right in appellant.

This brings us to the appellant's second proposition. The court held this action must be on the statutory bond, required by statute, and subject to the statute's ninety days notice provision.

The appellant's second alternate theory is that the separate payment bond (or the statutory bond) is enforceable under Title 18, Sections 1 and 3 of the Tulsa City Ordinances, without reference to the procedures prescribed in 61 O.S. § 2, that is without reference to the ninety days notice

provision. The appellant's brief shows the ordinance provisions in part as follows:

Title 18 § 1—

"Any and all persons, firms, or corporations, to whom there is let any contract for the doing of any public work by The City of Tulsa, Oklahoma, shall . . . procure a contractor's bond . . ."

Title 18 § 3—

"Contractor's Bonds required by Section 1 shall be executed by a corporate surety authorized to do business in the State of Oklahoma, shall run to The City of Tulsa, shall be in a sum total not less than the amount of the contract and conditioned that such contractor shall pay all indebtedness incurred for labor or materials furnished in the construction of such public building or in the making of such public improvements and any person to whom there is due any moneys for furnishing labor or materials upon such public improvement shall have a right of action upon such bond against the makers thereof."

The appellant asserts that Title 18 of the foregoing ordinances contains no notice or time requirement comparable to the restrictions which 61 O.S. § 2 imposes on 61 O.S. § 1. While the ordinances are not in the record, we assume all pertinent parts thereof are quoted since the trial court considered the same and the appellees raise no question. We further assume that not only do the ordinances contain no notice provision, but that it is silent otherwise on notice. From this lack of a notice provision (and silence on the subject) in the ordinances, the appellant asserts a "policy" of the City of Tulsa that persons in the position of the plaintiff may recover "with no condition of prior notice or any time limit except as the Statute of Limitation provides."

A statutory bond to protect laborers and materialmen was required in this case by 61 O.S. § 1 and appellant makes no argument to the contrary. Being required, it

was abviously given in satisfaction thereof. At one point, the appellant asserts that these defendants were under legal requirement to issue payment bonds both under 61 O.S. § 1 and the Tulsa Ordinances.

■■■ The trial court found that the contract clearly called for a statutory bond and that an "ordinance bond" was neither called for under the contract nor provided. The judgment of the trial court must stand if correct even though it is based on the wrong reasons. The trial court may have been correct in this analysis of the question, but even if we concluded that the statutory bond, although given in compliance with the statute, was also given in compliance with the ordinance, the appellant's position is still not sustained. For then at best, we are confronted with a specific statutory requirement for notice and an ordinance that is silent on the subject of notice. In that case, the appellant's position must be that it could sue on the statutory bond as such or sue on the statutory bond as a third party beneficiary contract given under the terms of the ordinance. Thus, it would have an election dictated in this case by the fact that under the statutory bond route he is barred by his failure to give notice. No such intent by the City of Tulsa is indicated here.

If the City of Tulsa had intended to impose more burdens on the contractor or give more rights to the laborers and materialmen than those set by 61 O.S. §§ 1 and 2, it should have set the same out.

We see here no intention on the part of the City of Tulsa to require of the contractor anything more than the usual statutory bond, both required and governed by state law. We are not required here to pass on the question of what the City might do to eliminate the notice requirement which the trial court correctly relied on in granting the appellees a summary judgment.

In urging that the ninety days notice is not necessary here, appellant cites *United States Fidelity & Guaranty Co. v. Star Brick Co.,* 54 Okl. 103, 153 P. 1122 (1915) and *Mid-Continent Casualty Co. v. W. S.*

*Dickey Clay Mfg. Co.,* Okl., 474 P.2d 647 (1970). In both of the cases, the action was sustained on grounds other than a statutory bond given under 61 O.S. § 1. In *Star Brick,* supra, the contract itself provided for payment of laborers and materialmen; and in *Dickey,* supra, a third party beneficiary right was created by the contract, where "Plaintiff's right to sue as a third-party beneficiary is conceded and only a limitations question is presented." These cases would be applicable only if a basis for a cause of action were shown other than on the statutory bond required by and given under 61 O.S. § 1. Here, we hold no other basis for a cause of action exists.

■■■ Finally, the appellant objects to the awarding of $2,500.00 attorney's fees to appellees, as prevailing parties, under the terms of 12 O.S. § 936. No question is raised as to the amount of the fees or as to this being a type of suit covered by that statute.

The statute provides that attorney's fees shall be set by the court to be taxed and collected as costs. The judgment in this case was made on November 7, 1974, although journal entry was not filed until January 6, 1975. The motion to tax costs and attorney's fees was filed on November 15, 1974, and the order allowing the appellees attorney's fees is dated December 13, 1974. The plaintiff filed its petition in error in this Court on December 2, 1974. An amended petition in error was filed in this Court on December 17, 1974, which amendment raises questions regarding the allowance of attorney's fees.

The appellant urges it is error to allow attorney's fees after the judgment is rendered. Defendants in pleadings asked for costs but not attorney's fees and at no time up to the judgment did they ask for attorney's fees. Eight days after judgment the first request for attorney's fees was made in the motion to tax costs.

No statute or court rule set the time for filing of the motion to tax costs or attorney's fees and no authority is cited to us as

to the necessity to pray for attorney's fees before judgment or the right to award them afterwards.

Little aid comes from the propositions advanced by the appellant: That attorney's fees cannot be secured in a subsequent action, *Kerr, Adm'x, v. United Collection Service et al.*, Okl., 267 P.2d 611 (1954); that attorney's fees cannot be given after the case is dismissed by plaintiff and not reopened, *Wood v. Hines*, 245 P. 846 (Okl., 1926); that attorney's fees cannot be given where never asked for in the trial court, *Mid-State Homes, Inc. v. Jackson*, Okl., 519 P.2d 472 (1974); or that attorney's fees are not costs, *Globe & Republic Ins. Co. v. Independent Trucking Co.*, Okl., 387 P.2d 644 (1963).

The appellant urges, in the absence of court rules or statutes on the subject, the limiting of time on requesting attorney's fees is and must be the date of the judgment on the merits. Even this would not eliminate some of the serious objections to not having a time limit, such as a delay in allowing attorney's fees that would complicate appellate procedure.

Serious problems can arise if the delay is too long. This is discussed in *Woods Construction Co., Inc. v. Atlas Chemical Industries, Inc.*, 337 F.2d 888 (10th Cir., 1964), where the court reversed the allowance of attorney's fees in a district court case, Northern District of Oklahoma, where judgment was entered May 31, 1963, and motion for attorney's fees was filed on December 23, 1963, and allowed on January 13, 1964. Attorney's fees were mentioned several times. The first time being at the close of trial on motion for directed verdict and costs where it was specified that this included attorney's fees. Whether this was in the motion or oral is not clear.

The court reversed the trial court on grounds that there was no compliance with local federal court rules that required the filing of a verified bill of costs within ten days of entry of judgment. Presumably the allowance of attorney's fees in that case would have been sustained if a motion for same had been filed within ten days of the judgment. The motion in the case before us was filed eight days after judgment.

In the absence of a time limit set by statute or court rules, the time of asking for and the time of granting of attorney's fees allowable under 12 O.S. § 936 must rest in the sound discretion of the trial judge. Here the appellant was not prejudiced and no unreasonable delay is indicated.

We further allow an additional amount of $750.00 attorney fees for appellees' additional services pertaining to the present appeal.

Appellees have asked for judgment on the supersedeas bond. The supersedeas bond or a certified copy thereof is not included in the case made or transcript of the record. Chapter 12, 15 App. (Rules of Procedure) 31. We therefore take no action on the application for judgment on the bond.

The judgment of the trial court is affirmed.

All the Justices concur.