## AETNA CASUALTY & SURETY CO. et al. v. TUCKER.

No. 25585.     Sept. 10, 1935.

Rehearing Denied Oct. 29, 1935.

Green & Farmer, for plaintiffs in error.

Chas. R. Gray and W. N. Palmer, for defendant in error.

PHELPS, J. The superintendent of the Osage Indian Agency entered into three separate contracts, on behalf of three different Indians, with T. H. Moler, by the terms of which Moler agreed to construct certain buildings and improvements upon the restricted lands of these three full-blood restricted Osage Indians, the three contracts being identical with the exception of the parties for whom the improvements were to be made and the character of the construction. There was a provision in the contracts reading as follows:

"It is further agreed by the party of the second part that he will furnish a bond without indemnity from a regular bonding company (no personal bond accepted) in the penal sum of $8,268 dollars to well and truly guarantee the terms of this contract, and also that said bond shall protect all dealers and workmen who have furnished material or services required in the construction of the building or buildings specified in this contract."

Moler executed the bond with the Aetna Casualty & Surety Company, as surety. There was a provision in the bond as follows:

"Whereas the principal has entered into a written contract dated January 6, 1933, with the obligee * * * a copy of which is hereby referred to and made a part hereof."

The bond also contained another provision reading as follows:

"The obligee shall faithfully perform all the terms, covenants and conditions of such contract on the part of the obligee to be performed."

Moler then made arrangements with John M. Thurman to superintend the work on the three jobs. It appears that Thurman had full charge of the construction and wrote checks, for the payment of the bills, on Moler's account. In fact it appears from the record that Moler was away much of the time and gave little, if any, attention to the performance of the contract. It was agreed between Moler and Thurman that Thurman should receive, as his compensation, one-half of the net profits.

The record discloses that at the time or prior to the agreement between Moler and Thurman, Thurman was engaged in operating a mill where certain finishing and other mill material for buildings were made; that he had got into financial difficulties and a trustee was appointed for the operation of the plant and that at least a portion of the mill work used in these jobs was procured from this plant, for which various laborers and materialmen held claims or accounts.

Thurman procured assignments of these accounts to himself, and he, in turn, assigned them to W. C. Tucker, who advanced Thurman the money with which to settle the claims of his creditors, and the mill was taken out of trusteeship. When the three jobs were completed, Tucker held these unpaid assigned claims, upon which he brought suit in the district court of Osage county and recovered judgment against Moler and the Aetna Casualty & Surety Company, the surety on Moler's bond, for $1,250, and from this judgment Moler and the Aetna Casualty & Surety Company prosecute this appeal.

For reversal, plaintiffs in error contend: First, that defendant Moler and John M. Thurman were partners on the jobs and, theretofore, the defendant surety company was the surety for both of them and could not be held liable for them or either of them and, therefore, could not be held liable to the assignee of Thurman. They cite numerous authorities in support of their contention with which we find no fault, but one of the principal questions submitted to the trial court was whether the relationship existing between Moler and Thurman constituted a partnership.

Each of them testified that they were partners, that is, they were partners in so far as sharing the profits was concerned, but the testimony of each of them developed a state of facts which, evidently, the trial court found did not constitute a partnership. They explained in their testimony that Moler was

away most of the time, that Thurman had charge of the jobs, that he wrote checks on Mo'er's account, and that all expenses incident to the completion of the jobs were to be paid by Mo'er. From this testimony it appears that the only manner in which they were partners was that they were to share the profits, if any.

In J. P. Martin Co. v. O'Connor et al., 120 Okla. 92, 250 P. 529, we held that this state of facts did not constitute a partnership, the second paragraph of the syllabus reading as follows:

"A contract for the remuneration of a person engaged in a business by a share of the profits of the business does not of itself make the servant or agent a partner in the business. In such a case there is no community of interest in the capital stock; the agent or servant does not act as and is not a principal trader; he is not clothed with the usual powers, rights, or duties of a partner but is subject to the orders of the owner of the business, and he has nothing to do with the losses except as they affect the amount of his remuneration."

Aside from this question, however, by the rule laid down in the first paragraph of the syllabus of J. P. Martin Co. v. O'Connor, supra, we are not permitted to interfere with the trial court's findings on this subject where there is any evidence reasonably tending to support the same.

It is next contended by plaintiff in error that:

"The bonds sued upon are indemnifying bonds in favor of the same obligee, and no other person could sue on them or either of them."

In other words, they contend that the obligee, to wit, the United States of America, or the Indian Agency, acting as an integral part of the government, is the only one who could maintain an action on the bond, and that the suit brought by Tucker could not be properly maintained. Counsel ably brief this question and cite numerous authorities in support of their contention, but, as we view it, we must look to the intention of the parties to the contract and bond, and ascertain what object was sought to be attained when the contract and bond were entered into. While the bond in question is not in the exact form of statutory bond in public work construction, still, as we view it, it served much the same purpose. It will be observed that in the contract Moler obligated himself to protect "all dealers and workmen who have furnished material or services required in the construction of the building or buildings specified in the contract." The bond itself refers to the contract and makes it a part thereof, and the bond further recites: "that the obligee shall faithfully perform all the terms, covenants and conditions of such contract."

Therefore, as we view it, the contract and the bond must be considered together for the purpose of ascertaining the intention of the parties, and thus considered, we can reach no other conclusion than that the Indian Agency, when the contract was made, was taking proper precaution, not only to see that the buildings were erected by Moler according to the terms of the contract, but that "all dealers and workmen who have furnished material or services" should be protected.

There could be no doubt but that the account sued on arose out of and in the course of the carrying out of the terms of this contract.

In Commercial Casualty Insurance Co. v. Town of Breckenridge, 128 Okla. 215, 262 P. 208, this court was seeking to determine the intention of the parties in a situation somewhat similar to the instant case and the authorities were therein collected, cited, and quoted from and in support of our conclusion herein we refer to and adopt the applicable authorities therein cited.

Finding no error in the judgment of the trial court, the same is affirmed.

McNEILL, C. J., and RILEY, BUSBY, and GIBSON, JJ., concur.