**Max B. GIBBS, Plaintiff in Error,**

v.

**TRINITY UNIVERSAL INSURANCE COMPANY, a Corporation, Defendant in Error.**

No. 38027.

Supreme Court of Oklahoma.

June 10, 1958.

Rehearing Denied July 8, 1958.

Application for Leave to File Second Petition for Rehearing Denied Oct. 28, 1958.

Fred E. Suits, Mary L. Weiss, Oklahoma City, for plaintiff in error.

Looney, Watts, Looney & Nichols, Oklahoma City, for defendant in error.

DAVISON, Justice.

This is an action brought by Max B. Gibbs against Trinity Universal Insurance Company, a corporation, Theta Gamma Chapter, Delta Delta Delta Housing Corporation, and Tippin Construction Company, Inc., to recover damages for an alleged breach of a building contractor's performance bond.

The record discloses that on the 26th day of October, 1955, Theta Gamma Chapter, Delta Delta Delta Housing Corporation, hereinafter referred to as owner, entered into a written contract with Tippin Construction Company, Inc., hereinafter referred to as contractor, whereby it agreed to furnish the labor and material for the construction of a sorority house at Norman, Oklahoma, in accordance with the plans and

specifications and the contract entered into between the parties for the parties for the consideration of $244,850.00. The contract, among other things, as far as here material, provides:

"The term Subcontractor includes those having a direct Contract with the Contractor, and it includes one who furnishes material worked to a special design according to the plans or specifications of this work * * * The term 'work' by the * * * Subcontractor includes labor or material, or both.

"The intention of the documents is to include all labor and material, equipment and transportation necessary for the execution of the work.

\* \* \* \* \* \*

"The General Conditions of the Contract, the Specifications and Drawings, together with this agreement, form the Contract, and they are as fully a part of the Contract as if attached or herein repeated."

Under the terms of the contract the contractor further agreed:

"To be bound to the Subcontractor by all the obligations that the Owner assumes to the Contractor under the Agreement, General Conditions, Drawings and Specifications, and by all the provisions thereof affording remedies and redress to the Contractor from the Owner.

"To pay the Subcontractor, upon the payment of certificates, * * * the amount allowed to the Contractor on account of the Subcontractor's work to the extent of the Subcontractor's interest therein.

\* \* \* \* \* \*

"To pay the Subcontractor on demand for his work or materials as far as executed and fixed in place, less the retained percentage at the time the certificate should issue, even though the Architect fails to issue if for any cause not the fault of the Subcontractor."

On the 6th day of January 1956 the contractor entered into a subcontract with plaintiff whereby the subcontractor agreed to do certain masonry work on the building, to furnish all material and pay for the labor for the total sum of $30,987; that the contract was amended August 23, 1956 by the addition of $191; that he completed the work required by the contract as amended, paid for all labor and material used in the construction work. The contractor paid him the sum of $26,861, leaving due a balance on the subcontract in the sum of $4,126, which amount the contractor has not paid. He contacted the contractor several times relative to these payments and the contractor advised him that the owner had failed to make payments in accordance with the terms of the contract and it was therefore unable to pay but would pay as soon as it was able to collect from the owner. He, however, thereafter found out that the owner had made payments regularly in accordance with the provisions of the contract and the full amount due under the contract had been collected and he thereafter brought this suit. He did not file a lien against the building.

On the 3rd day of November 1955, the contractor, Tippin Construction Company, Inc., entered into a surety bond with Trinity Universal Insurance Company, a Corporation, as surety, whereby the contractor as principal and the surety company as surety guaranteed unto the Delta Delta Delta Housing Corporation in the penal sum of $244,850 binding themselves to a full and faithful performance of the contract. The bond further provides:

"Whereas, the above bounden Principal has entered into a certain written contract with the above named Obligee, dated the 26th day of October 1955 for the construction of Delta Delta Delta Sorority House, Norman, Oklahoma which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein.

"Now, Therefore The Condition Of The Above Obligation Is Such, That

if the above bounden Principal shall well and truly keep, do and perform, each and every, all and singular, the matters and things in said contract set forth and specified to be by said principal kept, done and performed at the time and in the manner in said contract specified and shall pay over, make good and reimburse to the above named Obligee, all loss and damage that said Obligee may sustain by reason of failure or default on the part of said Principal, then this obligation shall be void; otherwise, to be and remain in full force and effect."

The evidence also shows that the owner paid the contractor periodical payments as they became due under the terms of the contract and upon certificate of the architect that the building has been completed according to the plans and specifications and terms of the contract paid to the contractor the balance due on his contract. This, in substance, constitutes the evidence in the case.

A jury was waived and the case was tried to the court who at the close of the evidence rendered judgment in favor of the plaintiff against Tippin Construction Company, Inc., in the total amount claimed with interest at six per cent per annum from October 6, 1956, and costs of suit and entered judgment against plaintiff in favor of defendant, Trinity Universal Insurance Company, surety on the Bond. Tippin Construction Comany, Inc., has not appealed from the judgment entered in favor of plaintiff as against it and the judgment as against it is now final.

The case was dismissed as against defendant, Delta Delta Delta Housing Corporation by plaintiff without prejudice.

 Plaintiff appeals from the judgment rendered in favor of defendant, Trinity Universal Insurance Company, a corporation, and contends that the judgment in favor of said defendant is not supported by the evidence and is contrary to law. It is argued by plaintiff that the intent of the bond with respect to the protection of

subcontractors, mechanics and materialmen is the controlling factor in determining the right to recover on the bond. In order to ascertain that intent, it is of course, necessary to consider and construe the bond and the contract therein mentioned, with all its parts, together. In order to ascertain the intent, it is sometimes necessary, and always proper, to consider the situation of the parties and the legal principles which they are presumed to know and have in mind. It would seem, when so considered and construed, there can be no doubt that the bond was intended as a faithful performance bond, and that the contract was made for the benefit of third persons, and that all subcontractors, dealers and workmen who furnished material or services are protected.

We agree that the controlling question herein is whether the bond and contract when considered together establish that they were made for the benefit of the subcontractor, plaintiff herein.

Our statute, 15 O.S.1951 § 29, provides:

"A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

Plaintiff in support of his contention, among other cases from other jurisdictions, relies on Aetna Casualty & Surety Co. v. Tucker, 174 Okl. 343, 50 P.2d 339, 340. We there held:

"Where suit is filed upon a bond executed and conditioned for the faithful performance of a contract, such contract and bond may be considered together to ascertain the intent of the parties, and separate paragraphs or isolated clauses therein cannot be construed as controlling, when violative of the intent of the written contract, considered in its entirety."

In that case it appears the superintendent of the Osage Indian Agency entered into three separate contracts, on behalf of three different Indians, with T. H. Moler, by the terms of which Mr. Moler agreed to construct certain buildings and improvements

upon the restricted lands of these three full-blood restricted Osage Indians, the three contracts being identical with the exception of the parties for whom the improvements were to be made and the character of the construction. There was a provision in the contracts reading as follows:

"It is further agreed by the party of the second part that he will furnish a bond without indemnity from a regular bonding company (no personal bond accepted) in the penal sum of $8,268 dollars to well and truly guarantee the terms of this contract, and also that said bond shall protect all dealers and workmen who have furnished material or services required in the construction of the building or buildings specified in this contract."

Moler executed a bond with the Aetna Casualty and Surety Company, as surety. There was a provision in the bond as follows:

"Whereas the principal has entered into a written contract dated January 6, 1933, with the obligee * * * a copy of which is hereby referred to and made a part thereof."

The bond also contained another provision reading as follows:

"The obligee shall faithfully perform all the items, covenants and conditions of such contract on the part of the obligee to be performed."

It further appears in that case that the contractor, Moler, completed the repairs required to do under the terms of his contract but failed to pay for certain material furnished by materialmen and also failed to pay for labor performed in making the repairs. These claimants then sold and assigned their claims to W. C. Tucker. Tucker then brought suit against the surety on the performance bond to recover the amount of these claims. The surety company as a defense set up that the contract was only made for the benefit and protection of the Indian Agency and not for the benefit and protection of materialmen and laborers who might furnish labor and service in making the repairs. The trial court denied this contention and entered judgment in favor of plaintiff. This Court, on appeal, in affirming that judgment, stated that the contract and bond must be construed together for the purpose of ascertaining the intent of the parties and, thus considered, stated that no other conclusion could be reached than that the contract was made for the protection not only of the Indian Agency but was made for the express purpose and benefit and protection of dealers and workmen who furnished material or services in making the repairs.

In Bristol Steel & Iron Works, Inc., v. Plank, 163 Va. 819, 178 S.E. 58, 59, 118 A.L.R. 50, the Supreme Court of Virginia held in determining whether sureties on a contractor's performance bond which refers to the contract are liable to unpaid materialmen, the bond and contract must be read together.

In that case it appears that Morris C. Miller and Sons entered into a written contract with Blacksburg Realty Corporation for the construction of a theatre and store building located in Blacksburg Virginia. The Virginia Trust Company advanced money to Morris C. Miller and Sons for the purpose of constructing and completing the building and took a mortgage upon the premises to secure the advancement. The contract, among others, contained the following provision:

"Article 1(e). The term 'work' of the contractor or sub-contractor includes labor or materials or both."

Morris C. Miller, as principal and Floyd Plank et al., stockholders of Blacksburg Realty Corporation, entered into a surety bond with the Virginia Trust Company guaranteeing the faithful performance of the contract executed by Morris C. Miller and Sons.

Morris C. Miller and Sons purchased material from the Bristol Steel and Iron Works, Inc., material used in the construction of the building, in the amount of $7,-412.47, which amount Miller and Sons had not paid. Bristol Steel and Iron Works,

Inc., then brought suit against the sureties on the bond above mentioned given to indemnify the Virginia Trust Company. The trial court held that it could not recover against the sureties on the bond because the bond was not made for its benefit but was made only for the benefit and protection of the Virginia Trust Company which advanced the money to Miller and Sons for the construction of the building. The Supreme Court on appeal reversed the judgment and in doing so said:

"In the determination of this case we are confronted by a single question of law.

"Are the defendants, as sureties on the bond, liable to the plaintiff for materials furnished by it, and used in the construction of the building?

"The bond and the contract must be read and considered together in solving this legal problem. The contract by very definite and explicit terms is referred to in the bond, and by its intendment and words is a part thereof.

\* \* \* \* \* \*

"The following taken from the annotator's notes, 77 A.L.R. [28] supra, are in point and are sustained by the cases cited:

" 'Where the public contractor's bond is conditioned for the benefit of laborers and materialmen, "the third party need not be ascertained or known at its inception to entitle him to the benefits thereof. The third party may adopt it when he becomes informed, and may enforce it at law as if originally made by his express authority." R. Connor Co. v. Aetna Idem. Co. (1908) 136 Wis. 13, 115 N.W. 811.' \* \* \*

"The bond in question embodied a two-fold purpose, the protection of the trust company to the extent provided, and the benefit and protection of the materialmen. This conclusion is inescapable, we think, when the bond and the contract are read and considered together, as they must be.

"The authorities cited amply support this conclusion. We reverse the judgment of the trial court and enter judgment for the plaintiff in error."

In Algonite Stone Mfg. Co. v. Fidelity & Deposit Co, of Maryland, 100 Kan. 28, 163 P. 1076, L.R.A.1917D, 722, the Supreme Court of Kansas held:

"A surety bond to guarantee the faithful performance of a contract for the erection of a building, which by reference makes the contract and specifications a part of the bond, the specifications requiring the contractor upon final settlement to furnish satisfactory evidence that all persons who performed labor or furnished materials under the contract have been fully paid, otherwise reserving to the owner the right to retain final payment 'until all liabilities are fully discharged by paying them from such money,' is held to have been intended for the benefit of laborers and materialmen under the contract; and therefore they may maintain a suit on the bond to enforce their claims without having filed mechanics' liens."

See, also, Southwestern Portland Cement Co. v. Williams, 32 N.M. 68, 251 P. 380, 49 A.L.R. 525; New York Indemnity Co. v. Hurst, 252 Ky. 59, 66 S.W.2d 8, 94 A.L.R. 864; Fidelity & Deposit Co. of Baltimore, Maryland v. Rainer, 220 Ala. 262, 125 So. 55; Annotations 77 A.L.R. at page 21; Annotations 118 A.L.R. at page 59.

Trinity Universal Insurance Company, defendant and surety on performance bond, contends that the evidence fails to show that the bond in question was made expressly for the benefit of the subcontractor, plaintiff herein; that the bond was made solely for the protection of the owner of the building; that it is the only one mentioned as obligee in the bond and the only one for whose protection it has been given; that the subcontractor, plaintiff herein, is not mentioned or named and the bond cannot therefore be said to have been made for his benefit

and protection. In support of this contention it cites the following Oklahoma cases: Beardsley v. Stephens, 134 Okl. 243, 273 P. 240; Electric Supply Co. v. City of Muskogee, 171 Okl. 130, 42 P.2d 140; Hawkins v. Mattes, 171 Okl. 186, 41 P.2d 880; Traders & General Ins. Co. v. Sand Springs Home, 195 Okl. 509, 158 P.2d 1018.

These cases announce the general rule as stated in the case last above cited:

"In order for a third party to recover upon an agreement between others to which he is not a party, the contract must be made expressly for his benefit. It must be intended to secure some benefit to him and there must be a promise legally enforceable. Electric Supply Co. v. City of Muskogee, 171 Okl. 130, 42 P.2d 140."

It would be impractical in this opinion to discuss and analyze these cases in detail. It is sufficient to say that we have read and examined these cases and find that the facts therein stated are so materially different from the facts in this case as to furnish no aid in the determination of the question here involved.

Defendant cites cases from other states which apparently support his contention. These cases are in the minority. We think the great weight of the authorities is to the contrary and is in accord with our holding in Aetna Casualty & Surety Co. v. Tucker, supra, which case we regard as highly persuasive, if not controlling here.

The contract in this case binds the contractor to pay to the subcontractor the amount due and payable under his contract. As above pointed out the contract and bond must be construed together in arriving at the intent of the parties. In so construing these instruments the bond must be read as being conditioned upon the payment of the amount due the subcontractor under his contract, and being so conditioned we think it quite clear that the bond was made for the benefit and protection of the subcontractor, plaintiff herein, and that he may maintain an action against the surety on the performance bond to recover the balance due on his subcontract. In holding otherwise the trial court erred.

Judgment in favor of defendant, Trinity Universal Insurance Company, a corporation, is reversed and the cause remanded with directions to enter judgment in favor of plaintiff and against said defendant.

HALLEY, JOHNSON, WILLIAMS, BLACKBIRD and JACKSON, JJ., concur.

WELCH, C. J., and CORN, V. C. J., dissent.