Ulpiano Casal, Inc., Plaintiff and Appellee, *v.* Totty Manufacturing Corp., Maryland Casualty Company, et al., Defendants and Appellant the latter.

No. R-63-269.       Decided June 26, 1964.

*Rivera Zayas, Rivera Cestero & Rúa* for appellant. *Emilio de Aldrey* for United States Casualty Co. and Continental Casualty Co. *Ponsa Feliú* and *Calderón & Souss* for appellee.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, pro tempore, Mr. Justice Dávila, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

According to the stipulation concerning the facts of the case agreed by plaintiff and codefendant-insurers, Félix A. León, Inc. (designated hereinafter as León), of which the U.S. Casualty Co., New Amsterdam Casualty Co., and Continental Casualty Co. are sureties, was the principal contractor of the public work "Candelaria Housing Development Project" in Mayagüez. Defendant Totty Manufacturing Corp. (designated hereinafter as Totty), was subcontractor of León in relation to the manufacturing and supply of some railings for said work. Appellant Maryland Casualty Co. issued to Totty, in favor of León, a performance bond which, insofar as pertinent to this case, reads:

"WHEREAS, the Principal has entered into a certain written agreement, dated the 8th day of December, A.D. 1958 with the Owner (or Obligee) for the fabrication of 308 railings (balconies) for Project 4-9—Municipal Housing Authority at Mayagüez, Puerto Rico (Candelaria Housing Project) in accordance with contract and specifications which agreement is or may be attached hereto for reference.

"Now, THEREFORE, the condition of this obligation is such, that if the Principal shall well and truly perform and carry out *the covenants, terms and conditions of said agreement,* then this obligation to be void; otherwise to remain in full force and effect." (Italics ours.)

Appellee Ulpiano Casal, Inc. (referred to hereinafter as Casal), supplied materials on credit to Totty, which the latter utilized in the construction of said railings, remaining in debt with Casal on that account for the amount of $9,667.39 notwithstanding the fact that Totty had received

from León the total amount stipulated by them in the aforementioned agreement or subcontract. On failing to collect from Totty, Casal requested León to pay him said balance of $9,667.39 and upon failing to recover said payment it filed action for recovery of said sum against the defendants herein, which action is grounded on the provisions of Act No. 388 of May 9, 1951 (22 L.P.R.A. §§ 47–58).[1]

---

[1] Sections 47, 49 and 51 of 22 L.P.R.A., corresponding to §§ 1, 3 and 5 of the Act, say:

Section 47. "Security for payment of wages and for materials; contractors' bonds.

"Every contractor who is awarded a contract for the construction, reconstruction, enlargement, alteration, or preparation of any public work, shall post a payment bond in behalf of the Commonwealth of Puerto Rico, which shall be obligatory and effective on and after the date on which the contract is executed."

Section 49. "Contractor's obligation as to wages and material.

"*The contractor shall be under obligation to pay* the salaries and wages of the employees and workers on the work for periods not longer than one week; *and to pay punctually, as they fall due,. the bills and invoices presented to him by any natural or artificial persons who have supplied, sold, or delivered materials*, equipment, and tools for the work." (Italics ours.)

Section 51. "Action against contractor, bond, or bondsmen; rights of employees of subcontractor.

"Every person, natural or artificial, who has worked as a worker or employee on, or who has supplied, sold, or delivered materials, equipment, and tools for, the work referred to under section 47 of this title, with regard to which work the bond required by sections 47–58 of this title has been posted, and who has not been paid, in whole or in part, as required by sections 47–58 of this title, his salaries or wages, or the price of the materials, equipment, and tools sold, delivered, or supplied for the work, shall have the right to file suit, without necessity for previous notice, against the contractor, against the bond of the contractor, against the bondsmen of the contractor, or against any of said bondsmen, for recovery of any amount which may for such reason be owing him. Any person or persons who have a direct contractual relationship with a subcontractor on the work and who have or do not have an expressed or implied contractual relationship with the contractor on the work, who has posted the bond, may institute action against the contractor, the bond of the contractor, the bondsmen of the contractor, or against any of the said bondsmen, for the recovery of all or any part of: (1) any amount which may be owed them by the sub-contractor for salaries or wages they have earned as employees or workers of the subcontractor on the work; and (2) any amount which may be owed them by reason of their having supplied, sold, or delivered materials, equipment, and tools for the subcontractor on the works. Suppliers or sellers of

The *agreement* or subcontract referred to in said performance bond provides:

"The contractor [León] and the subcontractor [Totty] agree to be bound by the terms of the General Conditions, drawings and Specifications, as far as applicable to this Subcontract, and also by the following provisions:

THE SUBCONTRACTOR AGREES:

To be bound to the Contractor by the terms of the General Conditions, drawings and Specifications, and to assume toward him *all the obligations and responsibilities that he, by those documents, assumes toward the owner.*" (Italics ours.)

Paragraph (a) of stipulation No. 3 of said General Conditions of the construction contract for the project in question, signed by León and the Municipal Housing Authority of Mayagüez, provides that " (a) Execpt as otherwise specifically stated in the contract [that is, in the construction contract of which this provision is a part] the Contractor *shall provide and pay for all materials,* labor, tools, equipment . . . of every nature whatsoever necessary to execute the work to be done under the Contract. . . ." Paragraph (d) of stipulation No. 4 provides in part that: "The Contractor shall include in all subcontracts related to the work the appropriate provisions *to bind the Subcontractors* to the Contractor *by the terms of the General Conditions,* specifications and other documents comprised in the Contract, as far as applicable to the work of the subcontractors. . . ." (Italics ours.)

---

materials, equipment and tools to the subcontractor shall be obligated, before instituting action against the contractor, his bond, or his bondsmen, to notify the contractor, by registered mail, of their claim. At the expiration of thirty days from the mailing of the said notice they may institute the action herein authorized. Workers and employees of the subcontractor may institute action at any time without previous notice to the contractor of their claim. In all other respects they shall abide by the rights and remedies granted by sections 47–58 of this title to the workers and employees and the suppliers of materials, equipment, and tools, of the contractor and the liabilities imposed by sections 47–58 of this title shall apply to the contractor, his bond, and his bondsmen."

The trial court rendered summary judgment in favor of Casal, ordering appellant Maryland Casualty Co. to pay said amount of $9,667.39, deciding in effect, that under the circumstances previously recited, the bond in question covered and was extensive to Totty's obligation to pay Casal the unpaid balance of the account for the materials in question. Said court also decided that among the different sureties liable for the payment, appellant is liable in the first place.

Feeling aggrieved, appellant requested the review of the judgment. It adduces two grounds: (1) that the bond in question only guarantees the performance of the work and not the payment of materials which Casal claims, and (2) that the judgment is void because it is based on the extension of the bond beyond its own terms. Appellant argues that the bond evidently covers only the physical performance of the subcontract, that is, the termination of the railings in the physical sense; that the doctrine of *Cristy & Sánchez* v. *Commonwealth*, 84 P.R.R. 226 (1961), is not applicable because it dealt with a statutory performance and payment bond in relation to a public work and the case at bar only deals with a private performance bond so that the doctrine applicable is that of the cases of *Batlle* v. *Pereyó*, 67 P.R.R. 621 (1947); *Morales* v. *Chabert*, 43 P.R.R. 114 (1932). Subsequent to the decision of the *Cristy* case, *supra*, we extended its doctrine to cases of private works in *A. L. Arsuaga, Inc.* v. *La Hood Constructors, Inc.*, *ante*, p. 101, where we said that a bond posted by a contractor on behalf of the owner of a private work and in which the payment to the materialmen is stipulated as a condition previous to the liberation of the surety from liability, covers and is liable for the claims of materialmen who have not been paid the amount for the materials supplied for and used in the construction. We expressly reversed *Batlle*, *supra*, and *Morales*, *supra*, "insofar as they are contrary" to the holding in *Arsuaga*, *supra*.

It is true that we are dealing with a performance bond. But, performance of what? As we already said, appellant argues that this kind of bond only covers the physical performance of the work and not the payment for materials and labor. Generally, the practice is to require both kinds of bonds in the construction of works like the one in this case. The scope of the bond is not exclusively determined on the basis of the label given to the obligation. We said in *Caballero* v. *Kogan*, 73 P.R.R. 617, 624 (1952), that "a mistaken label or isolated terminology scattered throughout a contract is not decisive. As in the case of a statute the various terms of a contract are read together and harmonized to determine the true intent of the parties." Section 1237, Civil Code (31 L.P.R.A. § 3475). When a controversy arises as to the meaning or scope of the terms of a contract, it should be construed more strictly against the party preparing it. *Torres* v. *Porto Rico Racing Corp.*, 40 P.R.R. 423, 425 (1930). Section 1240 of the Civil Code (31 L.P.R.A. § 3478). The bond in this case follows a uniform pattern established by the insurance companies so that it may be presumed that the one in the case at bar was prepared by appellant. Section 1726 of the Civil Code (31 L.P.R.A. § 4876) provides that security is not presumed, it must be express and cannot be extended further than that specified therein. *Stella, now his Heirs* v. *Municipality*, 76 P.R.R. 733 (1954); *Pratts* v. *District Court*, 66 P.R.R. 2 (1946); *Heirs of Belaval* v. *Acosta*, 64 P.R.R. 104 (1944). Nevertheless, the modern tendency favors a liberal interpretation of construction bonds. *Arsuaga, supra; Cristy, supra* at pp. 233–234. The principle that a surety is a favorite of the law has no proper application in the case of a company organized for the express purpose of acting as surety for compensation. *Sproul Const. Co.* v. *St. Paul Fire and Marine Ins. Co.*, 389 P.2d 194 (N.M. 1964).

■ An examination of the bond in question and the agreement or subcontract to which specific reference is made therein leads us to the inevitable conclusion that said guarantee has a wider scope than is generally understood from its classification as performance bond.[2] It should be noted that said obligation actually guarantees León, and according to *Cristy, supra,* and *Arsuaga, supra,* all the materialmen of the work, the performance of the stipulations, terms, and conditions of the agreement by Totty, that is, of the subcontract, by virtue of which, Totty bound himself to manufacture and supply certain railings for the work contracted by León. If we then examine said agreement or subcontract, we shall immediately see that Totty's obligation is not limited to the physical performance of the manufacturing and delivery of the railings. By virtue of said agreement, *Totty assumed, in relation to the part of the work subcontracted by it, León's obligation under the General Conditions of the principal construction contract and all the obligations and liabilities of León with the owner of the work.* According to said General Conditions, one of the *conditions* (which Totty assumed) was that of paying for all the materials. *Likewise,* it necessarily *assumed the obligation* imposed by law upon the principal contractor with the owner *"to pay punctually, as they fall due, the bills and invoices presented to him by any natural or artificial persons who have supplied, sold, or delivered materials . . . for the work."* (22 L.P.R.A. § 49.) (Italics ours.) It is evident, therefore, that the bond in this case is not only a performance bond but also a payment bond. This conclusion is fully supported by the case law. Let us see.

In *Gibbs v. Trinity Universal Insurance Company,* 330 P.2d 1035 (Okl. 1958), a bond was executed in favor of the owner of a work, to guarantee the faithful performance of

---

[2] It is fitting to state that the bond involved in this case was not expressly designated as a "performance bond."

a contract between said owner and the contractor. Said contract, which was made part of the bond, provided that the contractor bound himself to pay the subcontractor for his work and materials. There remained an unpaid balance of $4,126 under the subcontract. The owner of the work paid the contractor in full. It was decided that the subcontractor could recover said balance from the contractor's surety.

In Glens Falls Indemnity Company v. United States, 229 F.2d 370, 375 (9th Cir. 1955), it was said that the performance bond indemnified R against a failure by W to fully perform the subcontract, it required W to furnish materials and labor, which included W's contractual obligation of making timely and full payment for materials going into the work. It was decided that failing to pay for them was just as much a breach of performance of the subcontract as if he had failed to finish the work and that therefore the surety was liable for and was bound under the performance bond to pay for said materials.

In Anchorage Sand & Gravel Co. v. Alaska Dock & Bldrs., 119 F. Supp. 943 (Alaska D.C. 1954), defendant entered into a subcontract with Keney Co. for part of a work. He was required to furnish performance and payment bonds for $30,154 each. He furnished a payment bond for $60,368 in similar terms to those of the case at bar. Plaintiff supplied gravel to defendant. He was not paid for it although the principal contractor paid defendant the partial payments stipulated by the subcontract. The subcontractor and its surety were sued. It was stated that a bond guaranteeing the performance of a subcontract to supply materials and labor implies a promise to pay therefor. Cove Irrigation District v. American Surety Co., 42 F.2d 957 (9th Cir. 1930), cert. denied, 282 U.S. 891 (1930).

In Seaboard Surety Co. v. Standard Acc. Ins. Co., 14 N.E.2d 778 (N.Y. 1938), under a contract to remodel a post office, the contractor entered a subcontract for the

plumbing, sanitary and roof drainage. According to the principal contract, the contractor agreed to pay promptly all persons supplying labor and materials. The subcontractor agreed to supply materials and labor. Performance bond was obtained from the subcontractor in favor of the contractor. The former failed to carry the work to completion and failed to pay materials for the amount of $6,700. It was decided that a contract which requires furnishing materials means that the contractor is bound to pay for them; that the performance bond for said contract includes within its scope losses suffered because of the failure of the subcontractor to pay for materials furnished.

In view of the foregoing, the judgment in this case will be affirmed.

Mr. Chief Justice Negrón Fernández did not participate herein.