INTERNATIONAL PAPER COMPANY,
a corporation, Plaintiff-Appellant,

v.

Edmund R. WHITSON, a/k/a Ray Whitson, and Carolyn J. Whitson, United States of America, Secretary of Housing and Urban Development of Washington, D. C., and Advance Mortgage Corporation and Roosevelt Savings Bank of the City of New York, Defendants-Appellees.

No. 76–1429.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted July 18, 1977.

Decided Oct. 7, 1977.

Rehearing Denied Jan. 13, 1978.

**1134**

Dean G. Constantine, Oklahoma City, Okl. (Warren E. Slagle, Kansas City, Mo., and D. C. Johnston, Jr., Oklahoma City, Okl., on brief), for plaintiff-appellant.

Raymond E. Tompkins, John S. Odell, and John E. Green, Oklahoma City, Okl. (David L. Russell, U. S. Atty., Oklahoma City, Okl., on brief), for defendants-appellees.

Before McWILLIAMS, DOYLE and MARKEY.*

MARKEY, Chief Judge.

Appeal from a March 22, 1976 judgment of the United States District Court for the Western District of Oklahoma in favor of lender-parties to construction loan con-tracts, Advance Mortgage Corporation (Advance), Roosevelt Savings Bank of the City of New York (Roosevelt) and the United States of America, Secretary of Housing and Urban Development (HUD), and against a materialman claiming as a third-party beneficiary of the contracts, Interna-tional Paper Company (IPC). We reverse.

*Background*

The Timber Ridge Apartments, an apartment complex in Edmond, Oklahoma, was to be owned by Edmund R. Whitson and Carolyn J. Whitson (Owners) and was to be constructed by Edmund R. Whitson (Whitson). Construction was financed through a note and mortgage given to Advance and insured by HUD, pursuant to Section 221(d)(4) of the National Housing Act. 12 U.S.C. § 1715*l*(d)(4). IPC was a supplier of materials to the project through an agreement with the Owners.

On January 24, 1972, HUD issued a firm commitment for insurance advances in the amount of $845,100. Executed at initial closing on February 22, 1972, were a Building Loan Agreement, Completion Assurance Agreement, Mortgagee's Certificate, Mortgage, and Mortgage Note. The mortgage lender was Advance. Pursuant to 24 C.F.R. § 221.547, the Building Loan Agreement provided that no construction contract need be executed, because the mortgagor was also the contractor, but the Building Loan Agreement identified those documents which would comprise the "Construction Contract" referred to in the loan documents. The Completion Assurance agreement, given in lieu of performance and payment bonds, provided assurance for performance of the Contractor's obligations under the "Construction Contract" and for completion of the project in accordance with the "Construction Contract." The agreement was secured by a Completion Assurance Fund (Fund) in the amount of $68,101, supplied by Whitson in the form of two unconditional, irrevocable letters of credit.

---

* Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

Following initial closing, construction began. Advance assigned all of its right, title, and interest in the project to Roosevelt, but continued to act as loan servicing agent for Roosevelt.

Encountering financial difficulties, Whitson could not complete the project with the original loan balance and so notified Advance and Roosevelt. Roosevelt assigned the mortgage to HUD and claimed the mortgage insurance proceeds. By instruments dated June 11, 1974, and October 29, 1974, Roosevelt assigned all of its right, title, and interest in the project to HUD. In its settlement with Roosevelt, HUD deducted from the insurance proceeds an amount representing the Fund.[1]

On October 4, 1974, in the District Court of Oklahoma County, Oklahoma, IPC sued the Whitsons, HUD and E. D. Hill Surveying and Engineering Company,[2] to foreclose its lien for materials furnished the project. On November 6, 1974, the action was removed by HUD to the United States District Court for the Western District of Oklahoma. HUD filed an Answer and a Counterclaim for foreclosure of its mortgage lien upon the property. IPC filed an Amended Complaint on March 21, 1975, adding Advance and Roosevelt as parties defendant.

Liability of the lenders, Advance and Roosevelt, and HUD, is predicated on the theory that IPC is a third-party beneficiary of their agreements with the Owners.

HUD moved for a summary judgment that its mortgage lien was prior to IPC's materialman's lien. The court granted HUD's motion. Following the trial, HUD foreclosed and the property was sold.

In its Memorandum Opinion, the trial court denied IPC's claim against Advance, Roosevelt and HUD but decided that IPC was entitled to a judgment for $132,629 against the Owners. IPC appeals from that part of the judgment denying its claim against Advance, Roosevelt, and HUD.

### Issues

The issues are: (1) whether IPC is a third-party beneficiary of the agreements here involved, and (2) whether, if so, Advance, Roosevelt, or HUD is liable to IPC.

### OPINION

■ The trial court held, and we agree, that the substantive law of Oklahoma is applicable. Though state law has been held inapplicable in cases involving mortgages insured by and assigned to HUD, *United States v. Merrick Sponsor Corp.,* 421 F.2d 1076 (2d Cir. 1970), *United States v. Stadium Apts., Inc.,* 425 F.2d 358 (9th Cir. 1970), *cert. denied,* 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185, those cases did not involve a third-party beneficiary. Moreover, state law is preferable to the attempted fashioning of a rule of federal common law, absent a significant conflict between a federal interest and state law. *Wallis v. Pan American Corp.,* 384 U.S. 63, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1966).

Some district courts have declined to apply state law in determining whether a third-party is a beneficiary under circumstances similar to those here. In *United States v. Chester Heights Associates,* 406 F.Supp. 600 (D.S.C.1976) and in *Travelers Indemnity Co. v. First National State Bank of New Jersey,* 328 F.Supp. 208 (D.N.J. 1971), the courts applied what they viewed as federal law concerning rights of third-party beneficiaries. In *Chester Heights* the court quoted the guiding rule found in *United States v. View Crest Apts., Inc.,* 268 F.2d 380 (9th Cir. 1959), *cert. denied,* 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120, to the effect that "[l]ocal rules limiting the effectiveness of the remedies available to the United States for breach of a federal duty

---

1. Advance took no action when the letters of credit expired while it was servicing the loan for Roosevelt. When HUD reduced the insurance payment to Roosevelt by $68,101, Roosevelt recovered the same from Advance.

2. E. D. Hill Surveying and Engineering Company was a competing lien claimant which voluntarily dismissed its claim and is not involved in this appeal.

cannot be adopted." 268 F.2d at 383.[3] No impairment of the federal foreclosure remedy is involved here. HUD succeeded in establishing its lien priority and foreclosed on its mortgage.

### (1) Third-Party Beneficiary

■ In Oklahoma, when a contractor provides a performance bond to an owner, under a building contract, the intent of the contracting parties controls the determination of whether the bond is for the benefit of unnamed third-party subcontractors and materialmen. In determining that intent, the principal contract and the bond must be construed together. *Gibbs v. Trinity Universal Insurance Co.,* 330 P.2d 1035 (Okl. 1958); *Aetna Casualty & Surety Co. v. Tucker,* 174 Okl. 343, 50 P.2d 339 (1935).

In *Gibbs,* a construction construction contract required the contractor to pay all materialmen and laborers. The owner required the contractor to obtain a performance bond to assure completion of the project, and the construction contract was incorporated in the performance bond. The Oklahoma Supreme Court, rejecting the argument that the performance bond was made only for the protection of the owner, held that because the construction contract bound the contractor to pay materialmen and because the bond was conditioned on performance of the contract, the bond was intended for the benefit of the materialmen. The materialman recovered from the performance bond surety the unpaid balance due on his contract with the contractor, even though the materialman was not named and the owner was the only named obligee in the bond, and even though Okla. Stat. tit. 15 § 29 provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." [4]

The distinctions between the facts here and those in *Gibbs* are insignificant. Though there is no actual "construction contract" between the owner and the contractor, the owner being his own contractor,[5] there is a principal contract which parallels the construction contract in *Gibbs.* The principal contract is defined in the Building Loan Agreement as including the Building Loan Agreement, the "General Conditions of the Contract for Construction" (AIA Document A201) and the "Supplementary Conditions of the Contract for Construction" (FHA Form 2554).[6] And,

---

3. Some state laws do limit the effectiveness of the federal government's remedies. *United States v. Stadium Apts., Inc.,* 425 F.2d 358 (9th Cir. 1970), *cert. denied,* 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (state statutory requirements pertaining to post-foreclosure redemption periods); *United States v. New Britain,* 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954) (state law of lien priority).

4. In *Byler v. Great American Insurance Co.,* 395 F.2d 273 (10th Cir. 1968), this court noted in referring to *Gibbs:*

In allowing the subcontractor to recover, the court repeatedly approved decisions in other jurisdictions in which the intention of the parties was liberally construed. These decisions, which adhere to the better-reasoned view, have permitted subcontractors to enforce their claims without having filed mechanics' liens where there was revealed an intention in the instrument to benefit them as third-party beneficiaries. * * * This view prevailed in *Gibbs,* regardless of Section 4988, C.O.S. 1921 (15 O.S. § 29) which provides that a third-party beneficiary may enforce only a contract made expressly for his

benefit. [Citations omitted. 395 F.2d at 275–276.]

5. The Building Loan Agreement expressly provides that "notwithstanding the above provisions of this paragraph, FHA Form 2442–A, Construction Contract—Cost-Plus shall not be a requirement of this project."

6. An addendum to the Building Loan Agreement provides:

(a) All references herein and in any other documents, except the Payment Bond, relating to the construction of the project to "Contractor" or "General Contractor" shall be construed to refer to the Borrower [Owners], and all references to subcontractors shall be considered to include all persons who contract with the Borrower or others in connection with the construction of the project.

(b) All references herein and in any of such documents to "Contract" or "Construction Contract" shall be construed to refer to this Building Loan Agreement and the Drawings and Specifications referred to herein and made a part hereof, which specifications include the "General Conditions of the Con-

though there is no performance bond *per se* in the instant case, the Completion Assurance Agreement, secured by letters of credit, served the function served by the performance bond in *Gibbs.* That the Completion Assurance Agreement may have served an additional function as a payment bond[7] is of no moment when, as here, the Agreement assures, on its face, the performance of the contractor's obligations and completion of the project,[8] the precise function of a performance bond.

■ Thus, the relationship between the performance bond and construction contract in *Gibbs* is the same as that between the secured Completion Assurance Agreement and the "Contract" (as defined by the Building Loan Agreement) in the instant case. Under the Oklahoma contract law, therefore, determination of intent requires that the terms of the Building Loan Agreement and those of the Completion Assurance Agreement be construed together. As in *Gibbs,* where the contractor agreed to pay subcontractors for materials or labor, the contractor, Whitson, was here obligated to pay the subcontractors. AIA Document A201, incorporated in the Building Loan Agreement, provides, at Article IV, paragraph 4.1:

> tract for Construction" (AIA Document A201), and the "Supplementary Conditions of the Contract for Construction" (FHA Form 2554). The provisions of this instrument and the said FHA Supplementary Conditions take precedence over all inconsistent provisions in the said AIA General Conditions.

7. The Underwriting Summary Report provided for the furnishing of a performance bond in the amount of ten percent (10%) of the cost of the project and a payment bond in like amount. HUD Handbook 4430.1, *Initial Closing Commitment for Project Mortgage Insurance* provides at paragraph 1–12(a)(1) that "[f]or non-elevator type structures, where the estimated cost of construction or rehabilitation is $2,000,000 or less, a 10% performance bond and a 10% payment bond shall be provided." and at paragraph 1–12(b)(1) that:

> As an exception to the foregoing requirements, a Completion Assurance Agreement, FHA Form 2450, with a cash deposit or an irrevocable letter of credit equal to one-half of the amount of the indicated performance bond or 10% of the estimated cost of con-

Unless otherwise specifically noted, the Contractor shall provide and pay for all labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for the proper execution and completion of the Work.

We conclude, as did this court in *Byler v. Great American Insurance Co., supra,* note 4, that under Oklahoma law the parties to the secured Completion Assurance Agreement intended that subcontractors and materialmen be indemnified for loss resulting from the Owner's default.

■ The trial court concluded that *Gibbs* was not controlling because of a later Oklahoma Supreme Court decision, *G.A. Mosites Co. of Fort Worth, Inc. v. Aetna Casualty & Surety Co.,* 545 P.2d 746 (Okl.1976). In *Mosites,* however, the court did not overrule *Gibbs.* It distinguished the factual situation in *Mosites,* saying:

> [T]he third-party beneficiary contract sought to be established here must not create just an enforceable obligation on the prime contractor to pay his own debts, but it must create an enforceable obligation on the prime contractor to pay the debts of others, namely his subcon-

> struction rehabilitation, whichever is the greater, may be accepted in lieu of the performance and payment bonds.

8. The Completion Assurance Agreement provides in part:

> WHEREAS the Lender is unwilling to make advances of mortgage proceeds and the Commissioner is unwilling to insure the Mortgage unless the Contractor shall first furnish proper assurance to the Owner and to the Lender for:
> (a) the performance of the obligations assumed by the Contractor under said Construction Contract;
> (b) the completion of said project in accordance with the drawings and specifications referred *to in said Construction Contract,* free and clear of any liens, claims or encumbrances whatsoever, except for the lien of the insured Mortgage;
> (c) the satisfaction of any loss, damage or expense which the Owner or Lender may suffer or sustain through the failure of the Contractor to fulfill all obligations assumed under said Construction Contract.

tractor's debts. This is a significant distinction * * *. [545 P.2d at 749.] The court thus found no intention to include *sub-subcontractors* within coverage of the bond in *Mosites.* But IPC, the materialman here, was a subcontractor in privity with the prime contractor Whitson. *Gibbs,* not *Mosites,* is therefore controlling and IPC is a third-party beneficiary of the agreements here involved.

### (2) Liability

### (a) HUD

■ In *Gibbs* and in *Byler, supra,* the subcontractor third-party beneficiary looked to the performance bond surety for indemnification of loss resulting from the contractor's default. In the present case the materialman third-party beneficiary, IPC, must look to the party holding the Fund established by the Completion Assurance Agreement. The party holding the Fund is liable, not as a surety but as a trustee of that Fund. HUD now holds the Fund, which it acquired by deduction from its insurance settlement with Roosevelt. Therefore HUD must be held liable to IPC in the amount of the Fund ($68,101.00).

The liability of HUD, as assignee of the Building Loan Agreement and of the Completion Assurance Agreement and of the Fund securing it, comports with fundamental principles of contract law. The Restatement of Contracts, § 164 provides:

(1) Where a party to a bilateral contract which is at the time wholly or partially executory on both sides, purports to assign the whole contract, his action is interpreted, in the absence of circumstances showing a contrary intention, as an assignment of the assignor's rights under the contract and a delegation of the performance of the assignor's duties.

(2) Acceptance by the assignee of such an assignment is interpreted, in the absence of circumstances showing a contrary intention, as both an assent to become an assignee of the assignor's rights and a promise to the assignor to assume the performance of the assignor's duties.

IPC, as third-party beneficiary of the agreement here, is an obligee with respect to the Fund securing the Completion Assurance Agreement. HUD, as assignee of the mortgagor's right, title, and interest in the agreements, is the obligor. Moreover, HUD's assumption of the obligation to the third-party beneficiary is consistent with the agreements themselves. The Building Loan Agreement provides:

(18) As used in this instrument, the term "Lender" shall be deemed to include any person to whom the Note and Mortgage referred to above shall be assigned with the knowledge and consent of the Commissioner. This instrument shall be binding upon the parties hereto and their respective successors and assigns.

### (b) Advance and Roosevelt

■ Ordinarily, the assignments from Advance and Roosevelt would not discharge them from their obligations under the assigned contracts. However, where, as here, the assignors held the fund in trust under the Completion Assurance Agreement and disbursed it by assignment to HUD in accordance with that Agreement as required by 12 U.S.C. § 1713(g),[9] the third-party

---

**9.** 12 U.S.C. § 1713(g) provides, in pertinent part:

(g) Payment of insurance after default.— The failure of the mortgagor to make any payment due under or provided to be paid by the terms of a mortgage insured under this section shall be considered a default under such mortgage and, if such default continues for a period of thirty days, the mortgagee shall be entitled to receive the benefits of the insurance as hereinafter provided, upon assignment, transfer, and delivery to the Secretary, within a period and in accordance with

rules and regulations to be prescribed by the Secretary of (1) all rights and interests arising under the mortgage so in default; (2) all claims of the mortgagee against the mortgagor or others, arising out of the mortgage transactions; (3) all policies of title or other insurance or surety bonds or other guaranties and any and all claims thereunder; (4) any balance of the mortgage loan not advanced to the mortgagor; (5) any cash or property held by the mortgagee, or to which it is entitled, as deposits made for the account of the mortgagor and which have not

beneficiary can recover from the present holder, and IPC made no demand upon Advance or Roosevelt prior to the assignment, and where, as here, no element of fraud or inequitable conduct appears, the assignors cannot be held liable to the third-party beneficiary of the fund.

Two district courts have held assignors discharged in cases involving similar assignments to HUD under 12 U.S.C. § 1713(g). *Travelers Indemnity Co. v. First National State Bank of New Jersey, supra, Trans-Bay Engineers & Builders, Inc. v. Lynn,* 396 F.Supp. 265 (D.D.C.1975). In *Travelers,* a surety of the contractor of a HUD-insured project sought funds formerly held by the lender but in possession of HUD as the lender's assignee. The funds were retainages held back by the lender to assure project completion. The surety sued as third-party beneficiary of a Building Loan Agreement containing assignment provisions virtually identical to those now before us. Regarding discharge of the lender after assignment of HUD, the court stated:

> Although the assignment normally does not discharge an assignor of his duties under an assigned bilateral contract, *S. S. Kresge Co. v. Sears,* 87 F.2d 135 (1 Cir. 1936), we feel that the Bank's compliance with the statutory mandate embodied in Title 12 U.S.C. § 1713(g)(4) and (5) would constitute an affirmative defense to suit since the plaintiffs at least have enforceable rights against the assignee Secretary. [328 F.Supp. at 214.]

In *Trans-Bay* the court reached a similar conclusion:

> * * * Advance Mortgage by its assignment of the mortgage to HUD has transferred 'all rights and interests aris-

ing under the mortgage' to HUD, 12 U.S.C. § 1713(g)(1). An assignment ordinarily does not operate to relieve the assignor of duties under the contract. Here, however, statutory provisions and case law support the view that the mortgagee is no longer liable to suit after the mortgagor's default and the mortgagee's assignment to HUD, absent any impropriety on the mortgagee's part in regard to the contract. 12 U.S.C. § 1713(g); *Lindy v. Lynn,* 395 F.Supp. 769, 773 (E.D. Pa., 1974), aff'd, 515 F.2d 507 (3d Cir. 1975) (following assignment, Secretary 'clothed with all the rights and obligations' of the mortgagee); *Travelers Indem. Co. v. First Nat'l State Bank,* 328 F.Supp. 208, 211 (D.N.J.1971). [396 F.Supp. at 272.]

### Conclusion

We hold that IPC was intended as a third-party beneficiary, that neither Advance nor Roosevelt are liable to IPC, and that HUD is liable to IPC in an amount not exceeding the $68,101.00 Fund.

We reverse with instructions to enter judgment in favor of IPC and against HUD.

---

been applied in reduction of the principal of the mortgage indebtedness; and (6) all records, documents, books, papers, and accounts relating to the mortgage transaction.